**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. JENNIFER WILLIAMS, )<br>  )<br>       Plaintiff, )<br>  )<br>v.     )<br>  )<br>1. SOUTHEASTERN OKLAHOMA )<br>    FAMILY SERVICES, INC, )<br>  )<br>2. SOUTHERN OKLAHOMA )<br>    TREATMENT SERVICES, INC.,)<br>  )<br>       Defendants. ) | Case No. CIV-14-311-RAW<br><br>JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW THE PLAINTIFF** and hereby pleads her claims as follows:

## PARTIES

1. The Plaintiff is Jennifer Williams[1], an adult resident of Cleveland County, Oklahoma.

2. The Defendants are:

   A. Southeastern Oklahoma Family Services, Inc., a company doing business in Bryan County, Oklahoma; and

   B. Southern Oklahoma Treatment Services, Inc., a company doing business in Bryan County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff's causes of action are for disability discrimination (including failure to accommodate and retaliation for Plaintiff's requests for accommodation and complaints of disability discrimination) in violation of the Americans with Disabilities Act and Oklahoma's Anti-Discrimination Act. Plaintiff also claims interference with Plaintiff's rights under the FMLA and retaliation after Plaintiff utilized her rights under the FMLA. Jurisdiction over the federal claims are provided under 42 U.S.C.

---

[1] At the time of her termination, Plaintiff was known as Jennifer Gurnick.

-1-

§ 12117(a); 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331. The state law claims arise out of the same core set of facts and jurisdiction are vested over those claims by 28 U.S.C. § 1367(c). All of the actions complained of occurred in or near Bryan County, Oklahoma and the Defendants may be served in that county.

4. Bryan County is within the United States District Court for the Eastern District of Oklahoma, wherefore venue is proper in this Court under and 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. Defendants jointly and separately are covered employers under the FMLA in that they had more than fifty (50) employees during at least twenty (20) weeks of the current and proceeding calendar years who worked within seventy five (75) road miles of the facility where Plaintiff worked. Accordingly, Defendants are also covered employers under the ADA. There is no minimum employee requirement to be subject to the OADA.

6. Plaintiff began employment as Defendants' Quality Improvement Assistant around August 16, 2011.

7. Beginning when Plaintiff was hired an until around August or September, 2012 Plaintiff's pay stubs reflected her employer as Southern Oklahoma Treatment Services, Inc.

8. During the time period, however, Plaintiff also performed the job duties as the Quality Improvement Assistant for Southeastern Oklahoma Family Services, Inc.

9. Both Defendants shared the same corporate offices and administrative employees, including the Plaintiff. Both defendants share the same corporate office, utilize the same administrative staff members and share phone numbers, fax numbers and location addresses.

10. Around August or September, 2012 Plaintiff's pay stubs began coming from Southeastern Oklahoma Family Services, Inc., however, Plaintiff continued

performing services for both entities.

11. Both defendants share the same management personnel, including sharing the same Office Manager, CFO, and CEO, all of which supervised the Plaintiff and were responsible for evaluating Plaintiff's job performance and controlling Plaintiff's employment.

12. Defendants share the same administrative positions, including payroll and quality control.

13. For reasons including those set out in Paras. 6-12, the Defendants constitute a joint employer and/or an integrated enterprise such that they are both liable for the claims herein.

14. Plaintiff was qualified for her job as Quality Assurance Assistant and performed her job duties satisfactorily.

15. Around September 26, 2012 Plaintiff was diagnosed with a seizure disorder.

16. As a result of the seizure disorder, the Plaintiff suffered several seizures which caused her to be incapacitated and which require periodic visits to her health care provider. Further, such seizure disorder has continued over an extended period of time and will continue for at least several more years or for the rest of Plaintiff's life.

17. As a result of Plaintiff's seizure disorder, Plaintiff suffers from impairments which, without the ameliorative effects of mitigating measures, would substantially limit one or more of her major life activities (including bodily functions). For instance, in its active state, such as during a seizure, Plaintiff's condition:

    A. results in her being unable to stand or walk, think or understand as compared to an unimpaired person.

    B. substantially limits her major bodily functions, including neurological and brain functions in comparison to an unimpaired person.

18. Defendant perceived Plaintiff as having a disability and made comments about

      Plaintiff's condition affecting her ability to perform her job. These comments include, but are not limited to, asking the Plaintiff if her appointments to undergo MRI scans were to detect if Plaintiff "has a brain".

19. At the time she was diagnosed with a seizure disorder, Plaintiff's physician told the Plaintiff that she should not drive because of the risk of suffering from a seizure while operating a motor vehicle.

20. Plaintiff asked for reasonable accommodations of transferring her work location to Defendants' office located in Durant, Oklahoma, which was approximately one mile from the Plaintiff's home. As an alternative accommodation, Plaintiff requested the ability to work from home.

21. Defendants refused both requests for accommodation.

22. Defendants told the Plaintiff that they would arrange for someone to pick the Plaintiff up from home and drive her to work (approximately 15 miles away), however, this only lasted for about two weeks.

23. During this period the Defendants began harassing the Plaintiff about her ability to perform her job with her seizure disorder. For instance, Keri Dory[2] (CFO) asked the Plaintiff if her MRI was going to detect whether Plaintiff had a brain. Further, Ms. Ragan began to express concern about Plaintiff's ability to perform her job or whether Plaintiff was going to suffer a seizure while at work.

24. Around a month after Plaintiff first requested accommodations for her disability, Sharon Murphy attempted to discipline the Plaintiff. The alleged reason for the discipline was that Plaintiff had not reviewed the transition clinic charts for the Mead Transitions Clinic.

25. After Plaintiff presented Ms. Murphy with the documents showing Plaintiff had

---

[2] Spelling is approximate.

reviewed the file, Ms. Murphy changed tactics, now stating Plaintiff was going to be disciplined for being late to work the previous Friday.

26. Plaintiff complained to Ms. Murphy that she felt that the Defendants were trying to force her out of the company because of her seizure disorder.

27. Around October 26, 2012 Plaintiff asked off work for the first half of the day to go to a doctor's appointment for her seizure disorder. Plaintiff explained to Ms. Murphy that her doctor had rescheduled her appointment to earlier in the day. Although Ms. Murphy told the Plaintiff she could go to the doctor's appointment, the Plaintiff was terminated upon her return to work.

28. At the time Plaintiff requested off work for treatment she was an employee subject to the protections of the FMLA in that she had worked for the Defendants for at least one year and had worked at least 1,250 hours during the previous year.

29. Plaintiff was terminated the afternoon of October 26, 2012.

30. The stated reason for the termination was that Plaintiff was not doing her job.

31. This reason is pretextual in that Plaintiff was doing her job satisfactorily and the true reason for the termination was disability discrimination and retaliation after Plaintiff requested accommodations and complained of disability discrimination and/or her requests for FMLA protected leave.

32. Defendants failed to provide Plaintiff individualized notice of her rights under the FMLA, which is a *per se* violation of the FMLA.

33. As a direct result of Defendants' conduct the Plaintiff has suffered, and continues to suffer, lost wages (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm symptoms including stress, worry, anxiety, frustration, and similar unpleasant emotions.

34. Plaintiff was treated by her health care provider on multiple occasions after her termination, including around January 2013 and July 2013. Because of her

termination, Plaintiff was unable to utilize her FMLA protected leave.

35. Motivating and/or significant factors in the decision to terminate Plaintiff include her disability and/or opposition to disability discrimination and requests for reasonable accommodation. At the least these factors were part of a mixture of motives such that Plaintiff is protected under the mixed motive doctrine.

36. Plaintiff has exhausted her administrative remedies by timely filing an EEOC charge of discrimination in December, 2012. The EEOC issued Plaintiff her right to sue letter on June 16, 2014 and Plaintiff received such letter thereafter. This complaint is timely filed within ninety (90) days of her receipt of the right to sue letter. There is no exhaustion requirement under the FMLA.

## COUNT I

Plaintiff incorporates the above allegations and further asserts as follows:

37. Discrimination on the basis of a disability or perceived disability, and retaliation for Plaintiff's requests for accommodation is contrary to the ADA and the OADA.

38. Defendants' failure to take reasonable steps to accommodate the Plaintiff is a *per se* violation of the ADA.

39. Plaintiff is entitled to compensation for her lost earnings, past, present and future (and for the value of the benefits associated with such earnings), dignitary harm damages, and attorney fees and costs. Plaintiff is also entitled to liquidated damages under the OADA.

40. Because the actions of the Defendants were willful, intentional, malicious and/or, at the least, in reckless violation of Plaintiff's rights, Plaintiff is entitled to an award of punitive damages against the Defendants.

## COUNT II

Plaintiff incorporates the above allegations and further asserts as follows:

41. The interference with Plaintiff's FMLA rights and retaliation after Plaintiff utilized

or attempted to utilize FMLA leave violates the FMLA.

42. As a result of such interference and retaliation Plaintiff has suffered wage and benefit loss (past, present and future) for which she is entitled to compensation which also includes interest on the wage and benefit loss which accrues prior to trial.

43. Plaintiff is entitled to liquidated damages, which is an amount equal to the value of the wages, benefits and interest up through the date of trial. Plaintiff is also entitled to an award of attorney fees and costs.

**WHEREFORE**, Plaintiff prays that she be granted judgment in her favor against the Defendants on all of her claims and that this Court grant all available compensatory damages, punitive damages, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS 30th DAY OF JULY, 2014.**

s/ Amber L. Hurst
Mark Hammons OBA No. 3784
Amber L. Hurst, OBA No. 21231
HAMMONS, GOWENS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: Amberh@hammonslaw.com
*Counsel for Plaintiff*
*Jury Trial Demanded*
*Attorney Lien Claimed*